UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

EXXON MOBIL CORPORATION

VERSUS

SCHUTTE & KOERTING ACQUISITION
COMPANY; ET AL

CIVIL ACTION

NO. 3:10-CV-310-JJB-SCR

## RULING ON DEFENDANT'S 12(B)(2) MOTION TO DISMISS

This matter is before the Court on Defendant Reparex Fabricated Systems, Inc.'s ("Reparex") 12(b)(2) Motion (doc. 9) to Dismiss. Plaintiff Exxon Mobil Corp. ("Exxon") and Defendant Saint-Gobain Ceramic and Plastics, Inc. ("Saint-Gobain") have filed oppositions (docs. 38 & 39, respectively) to which Reparex has filed a reply (doc. 53). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the Court GRANTS Reparex's motion (doc. 9).

## Background

This case arises out of the failure of a set of allegedly defective nozzles purchased by Exxon from Defendant Schutte & Koerting Acquisition Company ("S&K"). In 1999, Exxon contracted with S&K to manufacture a set of nozzles for Exxon's Baton Rouge refinery. The nozzles were to serve an integral function in removing unwanted agents from Exxon's final product. On May 7, 2009, one of the nozzles failed causing damage to Exxon's facility, disruption of its operations,

1

and resulting in emissions for which Exxon was fined by federal and state agencies.

Prior to the incident, in 2009, S&K—a Pennsylvania corporation—contracted with Saint-Gobain—also a Pennsylvania corporation—to manufacture the nozzles' ceramic liners and to install the liners into steel casings manufactured by a non-party. Saint-Gobain then subcontracted the installation to Reparex—a Pennsylvania corporation. Saint-Gobain and Reparex performed all facets of the subcontracted job—negotiating and signing the contract; assembling the parts; shipping the parts to and from one another—in Pennsylvania. Saint-Gobain subsequently shipped the casings to S&K who completed assembling the nozzles. S&K then shipped the nozzles to Exxon's Baton Rouge refinery.

Reparex does not maintain a business presence or directly advertise in Louisiana (doc. 38, ex. 2). However, Reparex is referred business opportunities by three independent sales representatives ("Reps") (doc. 38, ex. 2). The Reps refer potential clients to Reparex and receive commissions for their referrals (doc. 38, ex. 2). None of these representatives work exclusively for or have written contracts with Reparex, and Reparex does not direct the Reps to pursue business in any particular state (doc. 38, ex. 2). For example, one of the Reps, George Fishler ("Fishler"), primarily pursues customers for Saint-Gobain but will channel customers to Reparex if St. Gobain is unlikely to meet a given customer's needs (doc. 30, ex. 3). Fishler visits Louisiana roughly one to two

times annually to recruit customers for Saint-Gobain, and his efforts have resulted in a contract between Reparex and a Louisiana company only once (doc. 38, ex. 3).[1] In addition, Saint-Gobain subcontracted or directed work to Reparex on at least three other occasions, and in each case, Reparex sent the finished product directly to a Louisiana resident (doc. 39, ex. 1).

On April 30, 2010, Exxon filed suit against S&K, Reparex and Saint-Gobain (doc. 1). Exxon asserts claims against S&K for (1) redhibition; (2) breach of contract; (3) violation of the Louisiana Products Liability Act; and (4) negligence. Exxon asserts claims against Reparex and Saint-Gobain for (1) redhibition and (2) negligence.

On August 6, 2010, Reparex filed its 12(b)(2) Motion (doc. 9) to Dismiss for Lack of Personal Jurisdiction. Reparex asserts that it does not have sufficient contacts with Louisiana for the Court to exercise personal jurisdiction over it. On February 28, 2011, Exxon and Saint-Gobain (collectively "Opposers") filed oppositions (docs. 38 & 39, respectively) asserting that Reparex, in fact, has sufficient contacts with Louisiana.

## Standard of Review

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has

---

[1] At Fishler's suggestion, Sasco, Inc. ("Sasco") of Kenner, Louisiana contacted Reparex in 2008. Since that time, Reparex has performed approximately seven projects for Sasco. Each time, Sasco shipped its product from Louisiana to Reparex in Pennsylvania, and Reparex coated the product and shipped the finished product back to Sasco.

3

jurisdiction over the defendant.  *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  In deciding a motion to dismiss for lack of personal jurisdiction, courts within the United States Court of Appeals for the Fifth Circuit accept the plaintiff's allegations as true, other than those which are conclusory or controverted, and conflicts between the parties' facts are resolved in the plaintiff's favor.  *Panda Brandywine v. Potomac*, 253 F.3d 865, 868 (5th Cir. 2001).

## Discussion

Reparex asserts that its contacts with Louisiana are insufficient for the Court to exercise personal jurisdiction over it (doc. 9).  Reparex asserts that it (1) does not maintain a business presence in Louisiana; (2) did not directly advertise to Louisiana companies; (3) directly did business with only one Louisiana company, and even then, only sparingly; and (4) was not aware that the nozzles it helped assemble were to be used by Exxon in its Baton Rouge refinery.  Reparex also asserts that even if these contacts were sufficient, the Court's exercise of personal jurisdiction would not be fair and reasonable because (1) Reparex will incur great expense litigating in Louisiana; (2) none of the parties are Louisiana citizens; and (3) none of the complained-of activities took place in Louisiana.

Opposers assert that this Court has general jurisdiction over Reparex because it (1) pursued Louisiana customers through Fishler; (2) repeatedly performed work for Sasco; and (3) delivered products, the work for which had been subcontracted by Saint-Gobain, to customers in Louisiana (docs. 38 & 39).

Opposers also assert that this Court has specific jurisdiction over Reparex because it could reasonably foresee that its product would end up in Louisiana because (1) the nozzles, of which the casings were a part, were specifically designed for Exxon's Baton Rouge refinery; and (2) there are only one-hundred-thirty refineries in the United States of which, seventeen (13%) are in Louisiana.

In a diversity action, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law. Fed. R. Civ. P. 4(e)(1). Louisiana's long-arm statute authorizes a court's exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment. *Panda Brandywine*, 253 F.3d at 868. A court's exercise of personal jurisdiction over a nonresident defendant comports with the Due Process Clause when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that state and (2) the court's exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather, the touchstone is whether the defendant purposely directed his activities towards the forum state, such that he could reasonably foresee being haled into court there. *Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006), *quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A party may establish minimum contacts sufficient for the state to

5

assert specific jurisdiction or general jurisdiction. *Alpine View Co. v. Atlas Copco*, A.B., 205 F.3d 208, 215 (5th Cir. 2000).

For a forum state to exercise general jurisdiction over a nonresident defendant, the defendant's contacts with the forum state must be continuous, systematic and substantial,. *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414-19 (1984). The defendant must have a business presence in the state; simply making isolated visits or shipping its product, even in substantial volume, into the forum will not suffice. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987). Simply put, the "continuous and systematic contacts test is a difficult one to meet." *Johnston*, 523 F.3d at 612.[2]

For a court to exercise specific jurisdiction over a nonresident defendant (1) the defendant must have purposely availed itself of the privileges of conducting activities in the forum state; (2) the cause of action must arise out of the defendant's forum-related contacts; and (3) the court's exercise of jurisdiction must be fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). A nonresident does not purposely avail itself of the

---

[2] *See, e.g.*, *Helicopteros Nacionales*, 466 U.S. at 414-19 (finding no general jurisdiction over nonresident which purchased 80% of its fleet from Texas over a six-year period; sent its management, pilots and maintenance personnel to Texas for training; and received payments from a bank located in Texas); *Johnston*, 523 F.3d at 611-14 (5th Cir. 2008) (finding no general jurisdiction over nonresident which, over a ten-year period, sold $140,000 in goods to ten different customers in the forum, sent personnel to the forum, and advertised in national publications directed to the forum).

privileges of conducting activities in the forum state merely by contracting with one of its residents or by placing into the stream of commerce a product which ends up there  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Nuovo Pignone, SA v. Storman Asia M/V*, 310 F.3d 374, 380 (5th Cir. 2002). Instead, the nonresident must be able to reasonably foresee that its product will be purchased or used by consumers in the forum state. *Id.*

After determining whether a defendant has sufficient minimum contacts, the court must next determine whether its exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. In doing so, the court considers (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interest of other states in securing the most efficient resolution to the controversy; and (5) the shared interest of the several states in furthering fundamental social policies. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

The Court finds that Reparex's contacts with Louisiana are insufficient to confer general jurisdiction.  Reparex maintains no business presence in the state of Louisiana; its offices and facilities are located solely in Pennsylvania (doc. 38, ex. 2).  Reparex has not sent any of its officers or employees to Louisiana for the purpose of soliciting business or completing projects (doc. 38, ex. 1).  At most, it has made isolated visits to Louisiana through Fishler, whose efforts for Reparex are derivative of his efforts for Saint-Gobain (doc. 38, ex. 3).  Finally, Reparex has contracted with only one Louisiana company, Sasco (doc. 38, ex. 2).

Moreover, Reparex has completed only seven projects on Sasco's behalf, the work for which was performed entirely at Reparex's facilities in Pennsylvania (doc. 38, ex. 2). Plainly, Reparex's activities in Louisiana have not been continuous, systematic or substantial enough to establish this Court's general jurisdiction over it.

The Court also finds that the Reparex's contacts with Louisiana are insufficient to confer specific jurisdiction. In for order specific jurisdiction to exist, the cause of action must have arisen as a result of the nonresident's contacts with the forum state. *Seiferth*, 472 F.3d at 271. However, Exxon has failed to demonstrate that Reparex had any contact with Louisiana as a result of its work on the nozzles. Exxon contracted with S&K—a Pennsylvania corporation—for assembly of the nozzles. S&K then contracted with Saint-Gobain—a Pennsylvania corporation—to manufacture the nozzles' ceramic liners and to install them in steel casings. Saint-Gobain subcontracted this work to Reparex—a Pennsylvania corporation—who performed all of the work in Pennsylvania and shipped the finished product to Saint Gobain in Pennsylvania. Opposers have produced no evidence that Reparex knew the casings were being assembled for Exxon, much less that they were intended for use in its Baton Rouge refinery. Moreover, Opposers' assert that Reparex could reasonably foresee that the casings would end up in Louisiana because 13% of the refineries in the United States are located in Louisiana. In doing so, Opposers essentially ask this Court to find specific jurisdiction solely because Reparex placed its product in the

stream of commerce, and the product ended up in Louisiana—something this the Court cannot do. See *Asahi*, 480 U.S. at 113. Simply put, as it pertains to the present dispute, Reparex in no way purposely availed itself of the privileges of conducting activities in Louisiana.

## Conclusion

Accordingly, the Court hereby GRANTS Defendant Reparex's 12(b)(2) Motion (doc. 9) to Dismiss for Lack of Personal Jurisdiction.

Signed in Baton Rouge, Louisiana this 6th day of May, 2011.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**